UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSHUA LEE MOSHER,

                    Petitioner,                    Case No. 1:20-cv-33

v.                                                 Honorable Robert J. Jonker

SHERRY L. BURT,

                    Respondent.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Joshua Lee Mosher is incarcerated with the Michigan Department of Corrections at the Thumb Correctional Facility (TCF) Lapeer, Lapeer County, Michigan. On January 15, 2014, following a two-day jury trial in the Ottawa County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b. On February 17, 2014, the court sentenced Petitioner to concurrent prison terms of 25 to 50 years on each count.

On January 10, 2020, Petitioner timely filed his habeas corpus petition raising three grounds for relief, as follows:

> I.   The insufficient evidence resulting in the conviction violated the Petitioner's constitutional right to due process for a fair trial.

II.     The Petitioner was denied his constitutional right to effective assistance of counsel because both his trial and appellate counsel failed to investigate and present a substantial defense by failing to conduct a reasonable investigation, interview witnesses, call expert witnesses to testify, and/or question witnesses adequately.

III.    The trial court violated Petitioner's due process rights by permitting the prosecution to introduce a separate sexual assault allegation.

(Pet., ECF No. 1, PageID.6-9.)  Respondent has filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because they are procedurally defaulted, meritless, or both.   Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.   Factual allegations

Petitioner was accused of sexually assaulting the daughter of the woman he lived with.  She was less than ten years old at the time of the assaults.  According to the victim, Petitioner engaged in a progressive pattern of sexual contact with her. (Trial Tr. I, ECF No. 8-4, PageID.589–617.)  The victim described an instance where Petitioner invited her into her mother's bedroom, directed her to disrobe, and lie down on the bed.   He proceeded to lie on top of her and "go[] up and down."   (*Id.*, PageID.592.)   He stopped "[w]hen some liquid came out of his private part."   (*Id.*, PageID.593.)  The victim reported that Petitioner's penis was under her butt, by her "butt hole," between her "butt cheeks," as he went up and down.  (*Id.*, PageID.593, 603.)  The victim reported that it happened "[a] lot."  (*Id.*, PageID.599.)

2

On another occasion, Petitioner attempted "to put his private part into" the victim's private part. (*Id.*, PageID.600.)  "It hurt until [she] started to cry."  (*Id.*, PageID.601.)  She also reported he rubbed his finger against her private part. (*Id.*, PageID.604.)  The victim also indicated that she walked in on Petitioner watching porn and that sometimes he would make her watch porn with him.  (*Id.*, PageID.606–608.)  The victim reported that on one occasion, Petitioner licked her private part and made her "suck on his private part[.]"  (*Id.*, PageID.609.)

The abuse came to light when the victim's mother walked in on her "doing it to [her younger brother]."  (*Id.*, PageID.612–613.)  "It" involved the victim being "on top of him sort of like bouncing on top of him."  (*Id.*)

The jury also heard testimony from the victim's mother, the doctor who examined the victim and an expert on child sexual abuse regarding delayed disclosure of such abuse.  Additionally, the prosecutor elicited testimony from a prior victim of Petitioner's sexual abuse.  The prior victim testified that Petitioner, who had dated her mother, attacked the prior victim in a park bathroom.  (*Id.*, PageID.665-686.)  He touched his penis to her vagina  (*Id.*, PageID.674.).  She was nine years old at the time.  (*Id.*, PageID.668.)

The prosecutor offered the testimony of the investigating officer, Ottawa County Sheriff's Office Detective Michael Tamminga.  Detective Tamminga played the video of his interview with Petitioner, with some redaction.  Detective Tamminga also testified regarding the content of the interview that was captured after the video recording equipment inadvertently shut off.  Additionally, Detective Tamminga restarted the video equipment and reviewed in summary with Petitioner the content of the interview that had not been recorded.  Another witness to Detective Tamminga's interview with Petitioner also testified regarding Petitioner's statements during the period of time the video recording equipment was not operating.

Finally, the prosecutor offered the testimony of the forensic interviewer from the Children's Advocacy Center of Ottawa County who interviewed the victim after the abuse was reported.  She testified regarding the nature of forensic interviews.

Petitioner offered the testimony of two witnesses: his mother, regarding Petitioner's visit to the fair with the prior victim, and a Zeeland Parks Department supervisor regarding the bathrooms at the park where the parties suspected the alleged attack of the prior victim took place.  Petitioner also testified.

Petitioner reported that the victim's testimony was false.  He identified an instance where the victim caught him masturbating.  He also indicated that he caught her masturbating.  He reported other instances where the victim had acted in a sexually inappropriate manner:  she pulled down Petitioner's pants; she reached into his pajama pants and grabbed his penis; she would grind herself on his leg; she

4

curled up next to him in his bed while he was sleeping nude—one time she pulled his half-erect penis from underneath her butt cheeks; and she learned how to break into the locked bathroom to watch Petitioner shower. Petitioner also reported that the prior victim's testimony was false. Yes, he took her to a park, but she never went to the restroom there, she went to the restroom at the Burger King.

After Petitioner testified, the prosecutor recalled the victim's mother. She indicated that Petitioner had never told her about the sexual incidents with her daughter, despite Petitioner's testimony to the contrary.

The jurors deliberated for about an hour before finding Petitioner guilty of all counts.

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals. Counsel raised two issues, improper vouching for the testimony of the victim through the Detective's statements in the recorded interview and improper admission of the testimony regarding the sexual assault of the prior victim. (Pet'r's Appeal Br., ECF No. 8-11, PageID.1054.) By opinion issued May 21, 2015, the court of appeals denied relief, affirming the trial court. (Mich. Ct. App. Op., ECF No. 8-11, PageID.992–994.)

Petitioner, again with the assistance of counsel, filed an application for leave to appeal to the Michigan Supreme Court raising the same two issues he raised in the court of appeals. (Pet'r's Appl. for Leave to Appeal, ECF No. 8-12, PageID.1334.) By order entered May 2, 2016, the supreme court denied leave to appeal. (Mich. Order, ECF No. 8-12, PageID.1331.)

5

Petitioner then returned to the trial court and filed a motion for relief from judgment. Petitioner raised five issues, including the issues he raises in his habeas petition as habeas grounds I and II. (*Compare* Mot. for Relief from J., ECF No. 8-7, PageID.918), *with* Pet., ECF No. 1, PageID.6-9). On February 16, 2017, the trial court rejected Petitioner's arguments. (Ottawa Cnty. Cir. Ct. Op. and Order, ECF No. 8-8.) With regard to the issues that Petitioner repeats in his petition, the court rejected them because Petitioner had failed to raise them on direct appeal and had failed to demonstrate cause for that failure. (*Id.*, PageID.984-987.) Accordingly, the court concluded that relief was not available under Mich. Ct. R. 6.504(D)(3).

Petitioner took no action, and then, nearly four months later, moved the court to reissue the opinion and order. The court obliged. Then, Petitioner moved to amend his motion for relief from judgment on July 17, 2017. The court permitted the amendment, but denied relief. (Ottawa Cnty. Cir. Ct. Order, ECF No. 8-10.)

Petitioner sought leave to appeal the trial court's denials of relief, first to the Michigan Court of Appeals and then to the Michigan Supreme Court. (Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 8-13, PageID.1527-1568; Mich. Appl for Leave to Appeal, ECF No. 8-14, PageID.1733-1792.) Those Courts denied relief by orders entered April 13, 2018, and March 5, 2019, respectively. (Mich. Ct. App. Order, ECF No. 8-13, PageID.1526; Mich. Order, ECF No. 8-14, PageID.1732.)

This petition followed.

## II.    **AEDPA standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535

U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan

7

state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);

*Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Insufficient evidence

Petitioner argues that the evidence he sexually penetrated the victim was not sufficient to support a verdict of guilt beyond a reasonable doubt. Petitioner raised

the issue in his motion for relief from judgment.  The trial judge rejected Petitioner's argument with respect to each incident of penetration alleged by the prosecutor:

> "Sexual penetration" under MCL 750.520a(r) means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."  Michigan courts have defined genitals to include both the vagina and the labia majora.  Additionally, Michigan Court[s] have defined "anal opening" to include both a person's anal canal and the crease of the buttocks adjacent to the anus itself.
>
> Here, the victim's testimony, summarized above, indicated that on separate occasions defendant rubbed his penis between the crease of the victim's buttocks, that defendant "tried" to put his penis into the victim's vagina [indicating penile penetration of the victim's labia majora], and that defendant rubbed his finger against the victim's vaginal opening [indicating digital penetration of the victim's labia majora].  Thus the evidence supports the existence of at least three acts of sexual penetration.

(Ottawa Cnty. Cir. Ct. Op., ECF No. 8-8, PageID.974) (footnotes omitted).  The court of appeals concluded the circuit court's resolution of the issued was not erroneous. (Mich. Ct. App. Order, ECF No. 8-13, PageID.1526.)  And the Supreme Court likewise concluded that Petitioner was not entitled to relief under the court rule regarding motions for relief from judgment.  (Mich. Order, ECF No. 8-14, PageID.1732.)

The issue, as Petitioner raised it in the state courts, however, was focused on whether the verdict was against the great weight of the evidence.  Pet'r's Br. in Support of Mot. for Relief from J., ECF No. 8-7, PageID.924-929.)  The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial.  *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998).  This question is distinct from the due-process guarantee offended by insufficient evidence, *see, e.g., Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007), and "does not

implicate issues of a constitutional magnitude." *Id.* at 133 n.8.  As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review.  *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ( "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Wyngarden v. Chapman*, No. 19-1442, 2020 WL 1952495, at *3 (6th Cir. Jan. 9, 2020) ("[A] claim that the verdict was against the great weight of the evidence does not present a federal constitutional question and is not cognizable on federal habeas review.").

Although Petitioner focused on the great-weight-of-the-evidence standard, he made passing reference to "due process" and "insufficient evidence" in the heading of his argument.  Accordingly, and giving Petitioner the benefit of the doubt, the undersigned concludes that Petitioner fairly presented the federal constitutional aspects of his claim to the state courts.[1]  Although the state courts did not expressly address the federal constitutional sufficiency claim, the trial court's determination of

---

[1] Fair presentation has a substantive component and a procedural component.  With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern *Picard v. Connor*, 404 U.S. 270, 277–78 (1971); *Levine v. Torvik*, 986 F. 2d 1506, 1516 (6th Cir. 1993).

11

the facts elicited at trial and the definition of vaginal and anal penetration under state law dictate rejection of Petitioner's sufficiency claim.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims:   the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Id.* at 319.   The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence.   *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Petitioner attacks the evidence on two fronts.  First, he argues that the sexual contact testified to by the victim does not rise to the level of sexual penetration under state law.  Second, he argues that the victim's testimony was not credible.  Neither argument is appropriate on habeas review under *Jackson*.

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  Petitioner does not dispute that the state courts have defined anal penetration to include the crease of the buttocks adjacent to the anal opening.  He contends the state should not so define anal penetration and that the statute does not permit such a broad definition.  But that is up to the state.  Whether conduct does, or does not, constitute anal penetration is entirely a state law issue.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, 502 U.S. at 62, whether or not a state court correctly applied its own law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id*. at 67-68.  The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983)*; see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state

court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Against those axiomatically correct standards of vaginal and anal penetration, the trial court's conclusion that the victim's testimony suffices to show both is well-founded. Petitioner's challenge to the credibility of that testimony might call into question the quality of that testimony, but not its sufficiency. *Martin*, 280 F.3d at 618. Moreover, the victim's testimony supports the reasonable inference that Petitioner penetrated the victim vaginally with his finger and penis and anally with his penis.

14

Petitioner suggests that the inference of sexual penetration is not reasonable. That suggestion depends in large part on his conclusion that the victim was not credible; but, to the extent the suggestion extends beyond credibility to the substance of the victim's testimony, the suggestion fails. *Jackson* holds that it is the factfinder's province to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational factfinder could make from the facts.

Certainly, the inferences identified by the trial court—that Petitioner penetrated the victim's vagina with his penis and finger and her anus with his penis—rationally flow from the underlying facts. The inferences need not be compelled by the facts. The inferences need not even be more likely than not; they simply need to be rational. *Id*. at 656.

In Petitioner's case, however, the inferences identified by the court of appeals are compelling. The jurors drew those inferences, the trial judge drew those inferences, and the undersigned, having read the transcript of the trial testimony, would draw the same inferences.

To succeed in his challenge Petitioner cannot simply reject the identified inferences; he must show that they are irrational. He has not done so. Therefore, Petitioner has failed to show that the state court's conclusion regarding the

sufficiency of the evidence is contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief.

## IV.    Ineffective assistance of counsel

Petitioner next contends that his trial counsel provided ineffective assistance thereby violating Petitioner's constitutional rights.  Petitioner's attack on counsel's effectiveness is scattered.  He contends that counsel filed to properly prepare for the preliminary examination or any court appearances, arriving only with a yellow legal pad and a pen.  Counsel failed to request funds to hire a qualified expert.  Counsel failed to investigate the layout of the restroom where Petitioner purportedly raped the "other bad acts" victim.  Counsel failed to rebut the prosecution's expert regarding delayed disclosure.  And counsel failed to object to portions of the recorded interview where the detective vouched for the credibility of the victim.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135

16

(6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  Even if a court determines that counsel's performance was unreasonable, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's ineffective assistance of counsel claims:

> Counsel is ineffective if the defendant establishes that counsel's performance fell below an objective standard of reasonableness and, but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different.

(Mich. Ct. App. Op., ECF No. 8-11, PageID.992-993) (citation omitted).  Although the court of appeals cited state authority in support of that standard, the standard was derived directly from *Strickland*.  *People v. Carbin*, 623 N.W.2d 884, 889 (Mich. 2001) ("To justify reversal under either the federal or state constitutions, a convicted

17

defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland . . . .*") (footnote and citation omitted).

### A.    The detective's comments

The issue regarding the detective's comments during the interview was raised on direct appeal.    The prosecutor played substantial portions of the detective's interrogation of Petitioner for the jury.    "The record indicates that defense counsel and the prosecutor reviewed the interrogation video before trial and cut out portions that they agreed were inadmissible . . . ."    (Mich. Ct. App. Op., ECF No. 8-11, PageID.992.)    On appeal, however, Petitioner identified additional portions of the interview that he contends were objectionable.    Petitioner claims counsel was ineffective for failing to redact them.    The court of appeals agreed that Petitioner's counsel's performance was not reasonable.    (Mich. Ct. App. Op., ECF No. 8-11, PageID.993) ("Having reviewed the video, we conclude that defense counsel's performance fell below an objective standard of reasonableness with respect to some of the challenged statements that improperly vouched for the victim's credibility.")[2]

---

[2] Petitioner identifies the objectionable content as follows:

> Throughout the video, Detective Tamminga rejected Mr. Mosher's repeated statements that he did not engage in sexual conduct with [the victim], stating that "obviously something happened" because [the victim] said it did.    [Detective Tamminga] insisted Mr. Mosher was not telling the truth and demanded that he begin to tell the truth, because Detective Tamminga had watched [the victim] disclose her claims about sexual contact, and he described her word as repeatedly consistent.    Detective Tamminga stated that he believed [the victim] because nine-year-olds cannot come up with a lot of detail when fabricating a story, and he stated that [the victim] could talk in "good detail" about what she alleged had happened.

18

Even though the court of appeals concluded that Petitioner's counsel's performance fell short, the court did not provide any relief because Petitioner had failed to demonstrate the second *Strickland* prong—prejudice:

> [D]efendant fails to show any reasonable probability that the outcome of his trial would have been different but for counsel's error. [citation omitted]    Not all of the challenged statements were inadmissible. Those that were occurred on few occasions in the context of a 90-minute video.    Further, the detective repeatedly asserted throughout the interrogation video that he believed that the victim initiated contact with defendant, which contravened the victim's testimony at trial.  The detective also testified before the video was played for the jury that he did not believe the truth of many of his statements during the interrogation.  The detective never clarified what or who he believed in this case.   In addition, both the victim and defendant testified at trial and, therefore, the jury had the opportunity to assess their respective credibility.   [citation omitted]  Accordingly, defendant fails to show that, absent counsel's error, there was a reasonable probability that the trial's outcome would have been different.

(Mich. Ct. App. Op., ECF No. 8-11, PageID.993.)

Petitioner responded to the court of appeals' determination that he had failed to show prejudice when he filed his application for leave to appeal to the Michigan Supreme Court:

> [T]he Court of Appeals found that Mr. Mosher was not prejudiced as a result of counsel's deficient performance.  This was an erroneous ruling in light of the inconsistencies of [the victim's] testimony and her delayed disclosure. The repeated vouching by the Detective during the interrogation of Mr. Mosher certainly undermined the fairness of his trial by making the victim's allegations appear more consistent and credible than the jury might otherwise have concluded had they been allowed to make their own independent credibility determinations.

---

(Pet'r's Appeal Br., ECF No. 8-11, PageID.1061–1062) (record citations omitted).  The specific quotes from the video transcript appear at pages 16–21 of Petitioner's appeal brief.  (*Id.*, PageID.1070–1075.)

(Pet'r's Appl. for Leave to Appeal., ECF No. 8-12, PageID.1337.)  Petitioner repeated the nature of the prejudice he claims to have suffered, "[e]ven if the comments did play a limited role in providing context to Mr. Mosher's statements, the prejudicial risk of including them, such as the risk that the jury would substitute Detective Tamminga's conclusions for their own, outweighed the possible probative value from their admission into the record." (*Id.*, PageID.1353.)

Petitioner carefully reviewed the four reasons the court of appeals concluded he had suffered no prejudice: (1) the detective's statement of his belief that the victim initiated contact with Petitioner, which contravened the victim's testimony; (2) the detective's statement that he did not believe the truth of the statements he made to Petitioner during the interrogation; (3) the detective's failure to clarify who or what he believed; and (4) the fact that both Petitioner and the victim testified such that the jurors had the opportunity to make their own credibility determinations based on face-to-face confrontation.  (*Id.*, PageID.1366-1371.)   Petitioner compared the circumstances in his case to those considered by the Michigan Supreme Court in *People v. Musser*, 835 N.W.2d 319 (Mich. 2013).  In *Musser*, the defendant was accused of inappropriately touching the victim—touching the victim's breasts and thighs and hooking his thumb in her underwear—while she was feigning sleep on a couch in the defendant's home.  Musser contended that he had simply hugged the victim and she misinterpreted the gesture.  Musser's police interview was played for the jury, including the detectives' questions, which were not dissimilar to the questions in Petitioner's case.  The Michigan Supreme Court determined that the

20

questions improperly vouched for the victim's credibility and that Musser had suffered prejudice as a result:

> [P]reserved evidentiary errors are not grounds for reversal unless they undermined the reliability of the verdict. *Krueger*, 466 Mich at 54, 643 NW2d 223. In this case, we conclude that they did.
>
> The evidence offered against defendant was not overwhelming. Although the complainant's testimony did not need to be corroborated, MCL 750.520h, there were no third-party witnesses in this case. Further, the prosecution relied on testimonial evidence and defendant's statements during the interrogation, and a factual dispute existed between the complainant's testimony and defendant's version of the events: defendant did not deny touching the complainant, but denied touching the complainant in the manner that was alleged and denied that his conduct was for sexual gratification. Thus, under the facts of this case, assessing witness credibility was the pervasive issue for the jury. As a result, the jury may have looked to the detectives' repeated out-of-court statements regarding the complainant's credibility, given the lack of physical evidence against defendant and the aura of expertise surrounding Detective Kolakowski.

*Musser*, 835 N.W.2d at 335.

It is important to recognize that neither the court of appeals nor the Michigan Supreme Court, the court that identified the prejudice in *Musser*, was troubled by the prejudicial effect flowing from the detective's questions in Petitioner's case.[3] The most significant difference between Petitioner's case and Musser's—a difference that renders the court of appeals determination of "no prejudice" reasonable—is that Petitioner's detective's questions were not the part of the interview that undercut

---

[3] The "prejudice" at issue in *Musser* was not assessed in the context of deciding whether an error by counsel rose to the level of constitutionally ineffective assistance because it met the prejudice prong under *Strickland*. Rather, it was considered in the context of whether nonconstitutional preserved error was an appropriate ground for reversal. Both standards for prejudice, however, are the same—did the error undermine the reliability of the verdict.

Petitioner's denials.  To the contrary, it was Petitioner's answers to those questions that most bolstered the victim's account.  Put differently, the evidence against Petitioner, or at least the evidence that decimated his credibility, was overwhelming in a way that the evidence in *Musser* was not.

Petitioner's victim testified that Petitioner called her into the bedroom, directed her to disrobe, had her lay on her back on the bed, and then he "started going up and down" with his private part "under [her] bottom."  (Trial Tr. I, ECF No. 8-4, PageID.591-593.)  She testified that it happened "a lot."  (*Id*., PageID.599.)  According to the victim, Petitioner once tried to put his private part into the victim's private part.  (*Id*., PageID.600.)  The victim testified that Petitioner rubbed her private with his finger.  (*Id*., PageID.604-605.)  She also testified that Petitioner masturbated in her presence and watched pornographic videos with her.  (*Id*., PageID.605-608.)  She also testified that Petitioner licked her private part.  (*Id*., PageID.608-609.)

During Petitioner's police interview, Petitioner started out denying everything. He said the victim did not walk in while he was masturbating but then acknowledged she might have, but that he could not recall a specific incident; but later, Petitioner recalled a specific incident with some detail, and eventually another.  (Interview Tr., ECF No. 8-11, PageID.1117, 1128, 1147-1148, 1156.)  Similarly, Petitioner started out by saying he had never touched her and that the victim had never touched him inappropriately, but ended up acknowledging that she would grind up against him, even while he was nude in bed, and had her hand on his penis.  (*Id*., PageID.1136-1137, 1149, 1151, 1154-1156, 1158, 1165-1168, 1170-1173, 1177, 1180-1183.)  Those

are the matters reflected on the interview transcript; however, Detective Tamminga and Children's Protective Services investigator Jennifer Hnilica testified with regard to what Petitioner admitted when the video equipment was not running.  Ms. Hnilica testified:

> He stated that there were times when [the victim] would crawl into bed with him in the morning after [her] mom . . . had left the home. He stated that on a handful of occasions, [the victim] was grinding on his morning wood.  That was the terminology that he had used.  He described her grabbing his penis and rubbing it on her butt cheeks and in between her butt cheeks.  He also stated that there were two occasions in which [the victim] had grabbed his penis and tried to put it into her vagina, but it wouldn't fit and he commented that, obviously, his penis was too big.  Obviously it didn't fit because it was too big.  He also talked about a time where they were in the living room on the couch and [the victim] put her hand inside his pants and touched his penis.  He continued to state that he didn't initiate any of this behavior and that he stopped it whenever—whenever he could.

(Trial Tr. II, ECF No. 8-5, PageID.733-734.)  Detective Tamminga's recollection of Petitioner's admissions was consistent with Ms. Hnilica's.  (*Id*., PageID.721-723.)

Certainly, Petitioner never acknowledged the situations as the victim described them, but he acknowledged a lot of facts that lent credence to her story while still blaming her and denying any inappropriate intention.  Petitioner acknowledged that, while he was nude and the victim was in bed with him, wearing only a t-shirt, she was grabbing his penis.  He could not tell "the destination," whether she was directing his penis to her butt cheeks or her vagina, because it only lasted a few seconds.

Petitioner's situation is simply not like Musser's.

Petitioner has failed to show that the court of appeals' conclusion—that the detective's vouching questions did not undermine the reliability of the verdict—was

contrary to, or an unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief on this issue.

**B.    Failure to seek out or call an expert regarding delayed disclosure**

There was some delay between the criminal sexual conduct and the victim's report of the criminal sexual conduct.  The prosecutor called a forensic interview specialist, Barbara Welke, to testify as an expert regarding the "process of disclosure." (Trial Tr. I, ECF No. 8-4, PageID.687–699.)  Ms. Welke's testimony was brief.  It touched upon the general idea that one might expect a person who has endured a traumatic event such as sexual abuse to disclose it immediately and some reasons why that might not be the case for children.  Petitioner complains that his counsel rendered ineffective assistance because he failed to investigate, and then retain, an expert on Petitioner's behalf to offer contrary testimony and because he failed to call such an expert to counter the prosecution's expert regarding "delayed disclosure."

The trial court rejected Petitioner's claim for two reasons.  First, the trial court concluded that Petitioner had failed to establish the factual predicate regarding counsel's failure to investigate such expert testimony.  (Ottawa Cnty. Cir. Ct. Op. and Order, ECF No. 8-8, PageID.986.)  Petitioner challenged that conclusion in his application for leave to appeal to the Michigan Court of Appeals.  (Appl. for Leave to Appeal, ECF No. 8-13, PageID.1533-1534.)  He claims that he investigated such expert testimony and that Dr. Katherine Jacobs (formerly Okla) has indicated she would have been able to provide testimony that delayed disclosure may, in fact, evidence fabrication.

24

Petitioner's response does not counter the trial judge's reason for rejection.  The issue is not, "Is there an expert who might offer testimony contrary to the testimony of Barbara Welke?"  The issue is, "Did counsel investigate the possibility of calling an expert who might offer testimony contrary to the testimony of Barbara Welke?"  There is nothing in Petitioner's presentation to the state courts or this court, and there is nothing in the state court record, that answers that question.  The trial court's conclusion that Petitioner's claim was factually unsupported, therefore, is reasonable and is neither contrary to, nor an unreasonable application of, *Strickland*.

The second reason the trial court rejected Petitioner's ineffective assistance of counsel claim was that the failure to call such an expert did not "undermine confidence in the trial's outcome."  (*Id.*)  That was so, the trial judge reasoned, because the fact that sex acts occurred was undisputed; Petitioner acknowledged such acts during his interview with police, even if he denied intention and placed the blame on the victim.  The question was really the nature and extent of those acts.  Moreover, as the trial judge noted, the victim did not delay reporting those acts any more than Petitioner did.

As the undersigned recently noted in *Howell v. Parish*, No. 1:19-cv-446, 2021 WL 1169846, at *9–10 (W.D. Mich. Mar. 4, 2021), the battle of expert testimony regarding delayed disclosure plays out in many CSC-I cases.  The relatively recent social media publication of first-hand accounts from thousands of victims revealing pervasive sexual harassment and abuse, typically never reported at the time it occurred,  *see e.g., Elliot v. Donegon*, 469 F. Supp. 3d 40, 51–52 (E.D.N.Y. 2020),

suggests that the common experience of jurors might be enough to help them evaluate the credibility of delayed disclosures without expert assistance.  Certainly, however, where the issue is not whether something inappropriate occurred—where putative victim and accused both report that something inappropriate happened—the significance of a delayed disclosure is minimal.  Under those circumstances, the trial court's conclusion that the failure to call a competing expert did not prejudice the verdict finds ample support in the record.

Petitioner has failed to show that the state court's rejection of his ineffective assistance claim premised upon failure to call a "delayed disclosure" expert is contrary to, or an unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief on that claim.

### C.    Restroom layouts and legal pads

Petitioner includes a couple of challenges to counsel's effectiveness for the first time in his habeas petition.  Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard*, 404 U.S. at 275–77; *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir.

26

2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138–39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner has not shown that he exhausted his ineffective assistance issue relating to the restroom stall count or the issue relating to counsel's lack of preparation as evidenced by showing up to hearings with just a legal pad and a pen.

Although Petitioner's failure to exhaust these issues in the state courts prevents this Court from granting habeas relief, it does not foreclose denying such relief on the merits.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a district court should deny a stay where unexhausted claims are meritless because, under 28 U.S.C. § 2254(b)(2) such claims may be properly denied); *Smith v. Nagy*, 962 F.3d 192, 204 (6th Cir. 2020) (court rejected unexhausted claim on the merits citing 28 U.S.C. § 2254(b)(2)); *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (explaining that a district court may "ignore the exhaustion requirement altogether and *deny* the petition if *none* of the petitioner's claims has any merit") (emphasis in original).  Neither of these claims has any merit;

accordingly, the Court will consider and deny relief on Petitioner's unexhausted claims.

Petitioner contends that counsel was ineffective because he failed to appropriately challenge the credibility of Petitioner's other victim based on differences between her description of the restroom in the park where Petitioner allegedly raped her and the description offered by the Parks Department witness. (Pet'r's Mem. of Law, ECF No. 1-3, PageID.33–35, 37.)  Essentially, the victim testified that she was raped in a bathroom with a single toilet stall and one sink.  The Parks Department witness testified that there were no single stall restrooms with one sink in the park.  Counsel highlighted this difference during questioning and raised it again in closing arguments.  Petitioner does not explain what more counsel could have done.  The undersigned concludes that Petitioner has failed to show that counsel's performance with regard to the restroom-stall-count discrepancy fell below an objective standard of reasonableness.   Accordingly, Petitioner has failed to demonstrate that counsel rendered ineffective assistance.

Petitioner also mentions that counsel was unprepared as evidenced by his showing up at hearings with nothing more than a yellow legal pad and a pen. (Pet'r's Mem. of Law, ECF No. 1-3, PageID.37-38.)  Other than challenging counsel's failure to object to the introduction of Detective Tamminga's interview questions and counsel's failure to call an opposing expert, however, Petitioner does not identify any shortcoming in counsel's performance that is evidenced by only showing up with a yellow legal pad and a pen.  Therefore, the undersigned concludes that Petitioner has

failed to show that counsel's performance fell below an objective standard of reasonableness simply because he showed up to hearings with a yellow legal pad and a pen.

## V.    Other bad acts evidence

Petitioner next complains that his trial was rendered unfair by the admission of the other victim's testimony regarding a rape that occurred several years before the crimes for which Petitioner was being prosecuted.  The Michigan Court of Appeals concluded that the evidence was properly admitted under state law.  (Mich. Ct. App. Op., ECF No. 8-11, PageID.993-994.)  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  502 U.S. at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id*. at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id*. at 75 n.5.

While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.  Therefore, the state court's admission of such evidence cannot

be contrary to, or an unreasonable application of, clearly established federal law and Petitioner is not entitled to habeas relief on this claim.

## VI.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

31

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  May 3, 2021                          /s/ Phillip J. Green
                                                    PHILLIP J. GREEN
                                                    United States Magistrate Judge



## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).